WO                                                                                                           JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Matthew Brown, | No. CV 19-05048-PHX-JAT (CDB) |
| Plaintiff, | **ORDER** |
| v. | **AND** |
| Unknown Alexander, et al., | **ORDER TO SHOW CAUSE** |
| Defendants. | |

Plaintiff Justin Matthew Brown, who is currently confined in the Arizona State Prison in Kingman, Arizona, filed this pro se civil rights action against Mesa Police Officers Jacob Alexander and Jared Bowman. (Doc. 1.) Before the Court is Defendants' Motion for Summary Judgment. (Doc. 31.) The Court will grant the Motion in part and deny it in part. The Court will also issue an Order directing Brown to show cause why this action should not be dismissed for failure to prosecute.

**I.   Background**

Brown's claim arose during his arrest on February 21, 2018. (Doc. 1 at 3.) He alleged that he was a passenger in a car when Officers Alexander and Bowman stopped the car, at which point Brown fled on foot. (*Id.*) Brown alleged that Bowman gave chase in his patrol vehicle and then hit Brown with the vehicle. (*Id.* at 3–4.) Brown claimed that Bowman and Alexander then beat, kicked, and punched Brown even though he was not

resisting and was incapacitated from being hit by the vehicle. (*Id.* at 4.) Brown stated that he suffered permanent facial scars, cuts and contusions, and post-traumatic stress disorder as a result of Defendants' conduct. (*Id.* at 3–4.) On screening, the Court determined that Brown sufficiently stated Fourth Amendment excessive force claims against Defendants. (Doc. 6.)

Defendants move for summary judgment on the grounds that their actions were reasonable in the circumstances and they are entitled to qualified immunity. (Doc. 31.)

The Court issued an Order with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Brown of the requirements under Federal Rule of Civil Procedure 56 and set a deadline for filing a response to Defendants' Motion. (Doc. 33.) Brown filed a Motion for Extension of Time to File Response, which the Court granted, and a new deadline of January 21, 2021 was set to file the response. (Docs. 35, 37.) Thereafter, Brown did not file a response, and the time to do so has expired.

**II.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th

Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

Further, where the nonmovant is pro se, the court must consider as evidence in opposition to summary judgment all of the pro se litigant's contentions that are based on personal knowledge and that are set forth in verified pleadings and motions. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *see Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).[1]

## III. Relevant Facts

On February 19, 2018, Alexander arrested Brown for possession of methamphetamines. (Doc. 32, Ex. 2, Alexander Decl. ¶ 3 (Doc. 32-2 at 2).) After he was brought to the jail, Brown told Alexander that he could obtain a gun quickly, and Brown offered to set up the person allegedly running this gun-selling scheme in exchange for his release. (*Id.* ¶ 4.) Alexander refused the setup offer. (*Id.* ¶ 5.) A short time later, Brown was transported to the hospital due to difficulty breathing. (*Id.*) Due to a high volume of police emergency calls, Brown was released from custody at the hospital. (*Id.* ¶ 6.) When Alexander learned that Brown had been released, he made plans to re-arrest him at a later time. (*Id.*)

---

[1] As stated, Brown did not file a response to the Motion for Summary Judgment; however, his Complaint is verified, and earlier in the proceedings, he submitted an affidavit. (Docs. 1, 15.) Both filings are considered as evidence in opposition to Defendants' Motion.

- 3 -

1    On February 21, 2018, Alexander and Bowman went to Brown's residence to re-arrest him for the previous drug-related crime. (*Id.* ¶ 8.) Defendants saw Brown exit his apartment and get into the passenger seat of his cousin's black Mercedes. (*Id.* ¶ 10; Ex. 1, Brown Dep. 19:25–20:2, July 8, 2020.) Brown was carrying a tan ammo case. (*Id.*, Ex. 1, Brown Dep. 19:25–20:1; Ex. 2, Alexander Decl. ¶ 10.) Brown and his cousin drove to the 7-Eleven on 8th Avenue and Dobson Road in Mesa and parked the car. (*Id.*, Ex. 1, Brown Dep. 20:2–5.)

Police SUVs immediately pulled up behind the Mercedes with their emergency lights on, and Brown stepped out of the car. (*Id.* 20:6–7; Ex. 2, Alexander Decl. ¶ 11.) An officer in a tactical vest pointed a shotgun at Brown and said, "don't you run, mother fucker." (*Id.*, Ex. 1, Brown Dep. 20:7–9.) Brown took off running, and he heard shots behind him. (*Id.* 20:10–11.) Brown ran across Dobson Road through heavy traffic, and Alexander chased him on foot. (*Id.*, Ex. 2, Alexander Decl. ¶¶ 13–14.) Bowman got into his police vehicle and began to pursue Brown. (*Id.* ¶ 15.) Brown ran across a few more roads and then jumped to climb over a wall surrounding an apartment complex. (*Id.* ¶ 16; Ex. 1, Brown Dep. 20:11–12.) As Brown was climbing the wall, he was shot in the right butt cheek with a beanbag shot gun and he fell over the wall. (*Id.*, Ex. 1, Brown Dep. 20:12–14; Ex. 2, Alexander Decl. ¶ 16.)

From this point, the parties' versions of events differ.

According to Defendants, Alexander climbed the wall and looked for Brown. (*Id.*, Ex. 2, Alexander Decl. ¶ 17.) A woman by her car pointed toward the center of the apartment complex, so Alexander began to run in that direction. (*Id.*) As he ran through the complex, he saw several tenants, including children, looking toward the center of the complex. (*Id.*) As Alexander approached the complex's main driveway, he saw Brown running and he also saw Bowman pull into the complex's main driveway and come to a stop in Brown's path. (*Id.* ¶ 18.)

Meanwhile, Bowman drove his vehicle into the apartment complex main driveway and saw Brown running toward the center of the complex. (*Id.*, Ex. 3, Bowman Decl.

¶¶ 10–11.) Bowman pulled his vehicle into Brown's path and came to complete stop. (*Id.* ¶ 11.) Brown then attempted to slide across the hood of the vehicle, but he lost his footing and fell to the ground. (*Id.*) Bowman exited his vehicle and saw Brown get up to continue to flee. (*Id.* ¶ 12.) Bowman quickly tackled Brown to the ground and attempted to handcuff him, but Brown continued to struggle and resist. (*Id.*) A few seconds later, Alexander arrived to assist, and Brown punched, kicked, and clawed at the officers to avoid being handcuffed. (*Id.* ¶ 12; Ex. 2, Alexander Decl. ¶ 21.) At one point, Brown grabbed one of Alexander's fingers and attempted to bend it backwards. (*Id.*, Ex. 2, Alexander Decl. ¶ 21.) After wrestling with Brown for about 30 seconds, Defendants were able to handcuff him. (*Id.*)

According to Brown, after falling over the wall, he continued running and went out onto Eighth Avenue, where the police SUV driven by Bowman began to chase him down. (*Id.*, Ex. 1, Brown Dep. 20:14–18.) Brown heard the vehicle's tires squeal as it sped up behind him. (Doc. 15, Brown Aff. ¶ 4.) The SUV chased Brown down, and right before it hit him, Brown jumped in the air. (Doc. 32, Ex. 1, Brown Dep. 20: 14–18.) The right side of the SUV hit Brown, and he hit the hood, and then the SUV hit the brakes, and Brown flew approximately 20 feet in the air and fell on his head and face. (*Id.* 20:19–22; Doc. 15, Brown Aff. ¶ 5.) Brown was so injured from the impact that he could hardly move. (Doc. 15, Brown Aff. ¶ 6.) Defendants were instantly on Brown and began punching and kicking Brown. (*Id.* 20:23–24.) Defendants handcuffed Brown almost immediately. (Doc. 32, Ex. 1, Brown Dep. 20:25.) After Brown was handcuffed, Defendants kept beating Brown and threatened to kill him, even though he was unarmed and not resisting. (Doc. 15, Brown Aff. ¶¶ 7, 11; Doc. 1 at 4.)[2]

An ambulance was called to the scene and Brown was taken to Banner Desert Hospital for stitches and x-rays. (Doc. 32, Ex. 1, Brown Dep. 5–6, 13–14; Doc. 15, Brown

---

[2] Brown alleged that a third officer filmed the entire incident on his cell phone. (Doc. 1 at 3; Doc. 32, Brown Dep. 21:6–8.) No cell phone video footage, nor any body camera video footage, was submitted with the summary judgment briefing.

Aff. ¶¶ 9–10.)  Brown was then taken to the Maricopa County Jail, where he was under wound care for weeks.  (Doc. 15, Brown Aff. ¶ 10.)

Brown subsequently pleaded guilty to a charge of aggravated assault on an officer, and he was sentenced to prison.  (*Id.* ¶ 11.)

**IV.     Fourth Amendment Excessive Force Claim**

   **A.     Legal Standard**

A claim that law enforcement officers used excessive force in the course of an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  This inquiry requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests."  *Id.*  To determine whether a Fourth Amendment violation has occurred, the court conducts a three-step analysis assessing (1) the nature of force inflicted; (2) the governmental interests at stake, which involve factors such as the severity of the crime, the threat posed by the suspect, and whether the suspect is resisting arrest (the "*Graham* factors"); and (3) whether the force used was necessary.  *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 396–97, and *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).  This is because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 396–97.

At the summary judgment stage, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record," the question of whether an officer's actions were objectively reasonable under the Fourth Amendment is a "pure question of law."  *Scott v. Harris*, 550 U.S. 372, 381 n.8

(2007). But an officer is not entitled to summary judgment if the evidence, viewed in the nonmovant's favor, could support a finding of excessive force. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). Because the excessive force balancing test is "inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City and Cnty. of S.F.*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotation marks omitted); *see Smith*, 394 F.3d at 701 (excessive force cases often turn on credibility determinations, and the excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom") (quotation omitted).

### B. *Graham* Analysis

#### 1. Nature of the Force Inflicted

In the *Graham* analysis, the Court must first evaluate "the type and amount of force inflicted." *Espinosa*, 598 F.3d at 537 (quotation omitted). "[E]ven where some force is justified, the amount actually used may be excessive." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). There are two uses of force at issue in this case.

The first use of the force is Bowman's use of his police vehicle to seize Brown. To constitute a seizure, there must be either physical force or submission to the assertion of authority. *Cal. v. Hodari D.*, 499 U.S. 21, 626 (1991). If a police car seeks to stop a fleeing motorist and accidently crashes into the motorist, there is no Fourth Amendment violation. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). But if a police car intentionally hits a motorist, a seizure has occurred. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989). Here, there is a dispute of fact as to whether Bowman intentionally hit Brown with his car. *See, e.g.*, *Soto v. Gaudett*, 862 F.3d 148, 161 (2d Cir. 2017) (in a case involving a car chase and then a foot chase by the police, ending with the plaintiff on foot being hit by a police car, agreeing with the district court that there was a dispute of fact "as to whether or not [the officer driving the car] hit [the plaintiff] intentionally"); *Toscano v. City of Fresno*, No. 1:13-cv-01987-SAB, 2015 WL 4508582, at *4 (E.D. Cal. July 24, 2015) (in a

- 7 -

case where a police officer in a car pursued an individual on a bicycle, and the police officer ran over the individual, killing him, stating that there was a dispute of fact as to whether the officer intentionally bumped the bicycle or whether the officer accidentally hit the bicycle as it was falling over). In the summary judgment analysis, the Court must take Brown's facts as true and analyze the use of force exercised by Bowman when, according to Brown, he sped up behind Brown and intentionally hit him with his patrol vehicle, which constitutes a seizure under the Fourth Amendment.

Defendants assert that assuming Bowman hit Brown with his vehicle, it was merely a bump that resulted in only a small cut on Brown's forehead. (Doc. 31 at 7–8.) Taking Brown's facts as true, however, Bowman's vehicle "crashed into him" and sent Brown "flying through the air after crashing onto the hood and window," and Brown flew approximately 20 feet before landing on his head and face, after which he could barely move. (Doc. 15, Brown Aff. ¶ 5.) Brown averred that his injuries included staples in the head and a concussion. (Doc. 1 at 3.) Brown's facts support that the contact with the vehicle was more than a bump and that Bowman's use of his vehicle to hit and seize Brown constituted a significant use of force and must be justified by a strong governmental interest. *See Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020) ("[a] moving vehicle can of course pose a threat of serious physical harm . . . if someone is at risk of being struck by it"); *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) ("[i]t is indisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon").

The second use of force occurred when Brown was on the ground after being hit by the vehicle, and Defendants allegedly beat him "maliciously," and Alexander kicked, stomped, and punched Brown. (Doc. 15, Brown Aff. ¶ 7; Doc. 1 at 3.) Punches and physical blows are a significant use of force. *See Nelsen v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012) ("physical blows or cuts often constitute a more substantial application of force than categories of force that do not involve a physical impact to the body"); *Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1105 (D. Or. 2013) (officer's use of closed

fist and knee to deliver "multiple 'focused blows' to [an arrestee's] head, shoulder, and side" is a significant use of force). There is no dispute that after the incident, Brown was taken to the hospital by ambulance, supporting an inference that his injuries were objectively serious. Brown averred that in addition to staples in the head and a concussion, he also suffered multiple facial contusions and required stitches and x-rays. (Doc. 1 at 3; Doc. 15, Brown Aff. ¶ 9; Doc. 32, Ex. 1, Brown Dep. 21:13–14.) These facts support that the force used by Defendants after Brown was on the ground was more than insignificant and must be justified by a strong governmental interest.

### 2. Governmental Interests

#### a. Severity of Crime

The Court applies the *Graham* factors to evaluate the importance of the government interest at stake during Brown's arrest. The first factor examines the severity of the crime at issue. *Espinosa*, 598 F.3d at 537. More serious crimes may require greater levels of force to apprehend the subject. *See Law v. City of Post Falls*, 772 F. Supp. 2d 1283, 1297 (D. Idaho 2011).

As to the first use of force involving Bowman's vehicle, Defendants were initially attempting to arrest Brown for possession of methamphetamines. This is not a very severe crime as evidenced by Defendants' own facts showing that Brown was released after being arrested for the same crime because other emergency calls took priority over keeping him in custody. But as Defendants argue, upon initiating a traffic stop to re-arrest Brown, he fled and resisted arrest, which constitutes a felony. (Doc. 31 at 6.) *See* Ariz. Rev. Stat. § 13-2508(B) (actively resisting arrest is a felony); *Williams v. Schismenos*, 258 F. Supp. 3d 842, 858 (N.D. Ohio 2017) (under the *Graham* factors, "[r]esisting arrest is a serious crime" that "place[s] everyone at the scene of the traffic stop at risk"). Thus, the crime at issue necessitated some force to apprehend Brown.

The "severity of the crime" factor is not directly relevant to the second use of force because at the time Defendants allegedly maliciously beat Lewis, he was already secured in handcuffs and he was not resisting.

### b.  Threat Posed by Brown

The "most important *Graham* factor" is whether Brown "posed an immediate threat to the safety of the officers or others." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). When considering whether there was an immediate threat, "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citation and quotation omitted).

Before Bowman's use of force with his vehicle, Brown fled from officers and led them on a chase through traffic, endangering both the officers and drivers on the road. Then Brown ran through an apartment complex where several tenants, including children, were outside, creating a potential risk to their safety. Because Brown had previously told Alexander that he could quickly obtain a gun, and Brown was seen leaving his apartment with an ammo case, Defendants did not know whether Brown was armed at the time.[3] In addition, Brown was initially being arrested for possession of methamphetamines; thus, Defendants did not know whether Brown was under the influence of drugs. Finally, according to Brown's facts, he ran from the apartment complex back onto Eighth Avenue, again creating a potential danger in traffic. Based on these undisputed facts, Brown posed a threat to officers and the public at the time Bowman used his vehicle to seize Brown.

The second use of force by Bowman and Alexander came after Brown was on the ground and secured in handcuffs. Because Brown was restrained and secured, he did not pose a threat to the safety of the officers or anyone else.

### c.  Resisting Arrest or Attempting to Flee

The Ninth Circuit has indicated that police are entitled to use force when arresting a person who flees from police authority. *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994). "[T]he level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance." *Bryan*, 630 F.3d at 830. There is no dispute

---

[3] In his deposition, Brown stated that he had some marijuana in the ammo case; however, Defendants would not have known that the case did not contain ammunition. (Doc. 32, Ex. 1, Brown Dep. 19:25–20:1.)

- 10 -

1  that Brown failed to comply with orders, resisted arrest, ran from the police, and led them
2  on a chase through traffic and an apartment complex.  Thus, this factor supports that
3  Bowman was justified in exercising force to seize Brown.

4        This factor is not directly relevant to the second use of force because, according to
5  Brown, the force used by Defendants came after he was handcuffed and secured.

### d.     Alternate Methods of Subduing Brown

7        With respect to Bowman's use of his vehicle to seize Brown, another factor relevant
8  to the reasonableness inquiry is whether there were "alternative methods of capturing or
9  subduing a suspect" available to Bowman.  *Smith*, 394 F.3d at 703; *see Bryan*, 630 F.3d at
10 831 ("we have held that police are 'required to consider '[w]hat other tactics if any were
11 available' to effect the arrest") (quotation omitted).  When considering this factor, the court
12 may not rely on hindsight, and instead must judge the officer's conduct from the
13 "perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396.

14       Defendants do not directly address this factor; however, they argue that Bowman's
15 use of force was reasonable because he was presented with a "tense, uncertain, and rapidly
16 evolving" situation where he was chasing a potentially armed "meth-user" through an
17 apartment complex with children present. (Doc. 31 at 8.)

18       Brown does not argue that other alternative methods were readily available to
19 subdue him when he continued to run from Defendants. (*See* Doc. 1.)  Objectively, there
20 are no clear, reasonable, and less intrusive alternatives that would have been readily
21 available to Bowman in the circumstances. *Cf. Bryan*, 630 F.3d at 831 (finding that in the
22 circumstances, there were objectively clear, reasonable, and less intrusive alternatives for
23 the defendant to effect an arrest of the plaintiff without resorting to an intermediate level
24 of force).  In hindsight, potential alternatives may be arrived at, but that is the type of
25 second guessing that is not permitted in the reasonableness calculation.  Thus, this factor
26 supports that ready alternatives to arrest Brown were not available and Bowman's use of
27 force was justified.

### 3. Necessity of Force

Finally, the Court must balance the force used against the need for such force to determine whether the force used was "greater than reasonable under the circumstances." *Espinosa*, 598 F.3d at 537 (quoting *Santos*, 287 F.3d at 854). This determination is judged from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396–97.

As mentioned, an automobile can inflict deadly force on a person. *Aceves-Rosales*, 832 F.2d at 1157. "An officer's use of deadly force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.1994) (emphasis omitted) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). Brown's flight from police and the uncertainty as to whether he was armed or on drugs created a significant threat of serious physical injury to the public. Although an automobile may constitute a deadly weapon, when assessing the totality of the circumstances confronting Bowman, it appears that his use of force to seize Brown was reasonable. To the extent that a reasonable jury may find that the use of force was excessive, as discussed below, Bowman is entitled to qualified immunity.

As to the second use of force, construing the facts in Brown's favor, the force used was greater than reasonable under the circumstances. Brown alleges that he was restrained on the ground and handcuffed, in which case he posed no threat and there was no need for force, yet Defendants continued to punch and kick him. *See Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000) (where there is no need for force, any force used is excessive), *vacated and remanded on other grounds*, *Cnty. of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001). Accordingly, there exists a genuine issue of material fact whether the force used by Defendants in these circumstances was objectively reasonable under the Fourth Amendment.

### V. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. (Doc. 31 at 8–11.) Government officials enjoy qualified immunity from civil damages unless their conduct

violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230–32, 235–36 (2009) (courts may address either prong first depending on the circumstances in the particular case). In the qualified immunity analysis, the court must consider all disputed facts in the light most favorable to the nonmovant. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017).

### A. Bowman's Use of Force with Vehicle

For the purposes of this analysis, the Court will begin with the second prong—whether the right at issue was clearly established such that Bowman would have known that his conduct was unlawful. *See Pearson*, 555 U.S. at 230–32; *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

For a right to be clearly established there does not have to be a case directly on point; however, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2017)). Clearly established law "must be particularized to the facts of the case," and "should not be defined at a high level of generality." *White*, 137 S. Ct. at 552 (quotation and citation omitted). A right is clearly established when case law has been "earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White*, 137 S. Ct. at 551).

Once the right at issue is defined, the court must then "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated" that right. *Id.* If there is no such case, then the right was not clearly established. *See id.* at 1117–18. "This is not to say that an official action is protected by qualified immunity

1 unless the very action in question has previously been held unlawful, but it is to say that in
2 the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S.
3 730, 739 (2002) (internal citations omitted).  "The Supreme Court has made clear that
4 'officials can still be on notice that their conduct violates established law even in novel
5 factual circumstances.'" *Mattos*, 661 F.3d at 442 (quoting *Hope*, 536 U.S. at 741).  This
6 principle is particularly relevant "in the context of Fourth Amendment cases, where the
7 constitutional standard—reasonableness—is always a very fact-specific inquiry." *Id.*; *see*
8 *Drummond v. City of Anaheim*, 343 F.3d 1052, 62 (9th Cir. 2003) (holding that "no federal
9 case directly on point [was needed] to establish" that the conduct at issue violated clearly
10 established law and constituted excessive force).

11 Defendants argue that there is no case law putting officers on notice that Bowman's
12 actions would have been unreasonable in the circumstances. (Doc. 31 at 9–10.)  They rely
13 on an Eleventh Circuit Court case holding that the Fourth Amendment is not clearly
14 violated when an officer hits a suspect with a vehicle while trying to apprehend the suspect.
15 In *Haynes v. Richmond County Sheriff's Office*, the defendant officer responded to a
16 disturbance and heard people say that the plaintiff had a firearm.  749 F. App'x 935, 937
17 (11th Cir. 2018).  The plaintiff fled in his car, and the defendant pursued him.  *Id.*  The
18 plaintiff then abandoned his car and fled on foot, and the defendant hit the plaintiff with
19 his patrol car.  *Id.*  The defendant claimed that he did not intentionally hit the plaintiff with
20 his patrol car; rather, he was trying to discourage the plaintiff's flight by placing the patrol
21 car in his path.  *Id.* at 939.  The plaintiff alleged that the defendant intentionally hit him at
22 a speed of 60 miles per hour causing him to fly six feet into the air, after which he was
23 transported to the hospital for treatment of a concussion, lacerations, and abrasions.  *Id.* at
24 937, 939.  The appellate court found that a reasonable jury could find the defendant
25 intentionally hit the plaintiff with the patrol car.  *Id.* at 939.  But it also determined that
26 neither *Graham v. Connor* nor *Tennessee v. Garner* would have put a reasonable officer
27 on notice that the Fourth Amendment prohibited using a patrol car to stop the plaintiff's
28 flight because, in the circumstances, the defendant could have concluded that the plaintiff

was armed and posed a threat of immediate harm. *Id.* at 939–40.

Defendants cite to other cases holding that it is objectively reasonable for officers to use deadly force to stop a fleeing motorist if he poses a threat to others. (Doc. 31 at 10.) *See Plumhoff v. Rickard*, 572 U.S. 765, 768–770, 776–77, 780–81 (2014) (where an officer pulled a car over because it had only one operating headlight, and then a chase ensued for over 5 minutes during which the driver's "outrageously reckless driving posed a grave public safety risk," it was objectively reasonable for officers to use deadly force and fire up to 15 shots at the car to get it to stop; alternatively, defendants would be entitled to qualified immunity); *Scott v. Harris*, 550 U.S. 372, 386 (2007) ("a police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death"). Defendants argue that if it is reasonable for officers to use deadly force against a fleeing motorist, it should be reasonable to use such force against a suspect who is fleeing on foot. (Doc. 31 at 10–11.)

As Defendants indicate, there are few cases involving the use of patrol car to stop an arrestee fleeing on foot. But the Court found a case from the Northern California District Court involving such a scenario. In *Martin v. City of San Jose*, the plaintiff and his cousin verbally engaged with security guards outside a mall restaurant where the two had been drinking, and the two then left the mall, crossed an expressway, and made their way to a bike trail. No. 19-cv-01227-EMC, 2020 WL 5910078, at *2 (N.D. Cal. Oct. 6, 2020). The defendant officer received a call from dispatch about an incident at the mall where two men were "threatening to shoot security guards but no weapons had been seen," and dispatch reported that one of the men had brandished a knife. *Id.*, at *3. The defendant saw the two men enter the bike trail and he pursued them in his patrol car. *Id.*, at *3–4. The plaintiff and his cousin noticed the car behind them and began to jog, and the patrol car then hit the plaintiff in the lower back knocking him to the ground on his stomach. *Id.*, at *4. The plaintiff was then run over in his pelvic area, and then the defendant backed his car up again and ran over the plaintiff's ankle. *Id.*, at *4. In its excessive force analysis, the

district court found that a reasonable jury could find that the force used was not reasonable because, although the plaintiff was attempting to evade arrest by flight, the crime at issue was not dangerous, there had been no physical confrontation with a knife and no attempted stabbing, and there was no imminent danger from the plaintiff to the defendant or the public. *Id.*, at *13. The district court denied qualified immunity to the defendant despite the absence of any specific case where an officer's intentional striking of a suspect with a car was held to violate the Fourth Amendment, noting that "perhaps because such conduct is so out of bounds there is no such prior case." *Id.*, at *14. The district court found that in the specific circumstances, the facts presented an obvious constitutional violation; namely, (1) potentially deadly force was used, (2) the plaintiff did not present an imminent threat to the public or to the defendant, (3) the plaintiff never pulled out or revealed a knife during the pursuit, and (4) a fence blocked the plaintiff from a nearby shopping center area, and other officers were in the area. *Id.* The district court noted that it was clearly established that the mere possession of a weapon is insufficient to justify the use of deadly force; thus, the fact that the plaintiff may have had a knife did not justify the defendant's use of force. *Id.*, at *15 (citing *Estate of Lopez v. Gelhaus v.*, 871 F.3d 1002, 1013, 1018–19 (9th Cir. 2017.)

The holding in *Martin* does not preclude finding qualified immunity warranted in the instant case because *Martin* was decided two years after Brown's arrest. More importantly, the facts are not analogous. Although Bowman used potentially deadly force, Brown presented an imminent threat to the public, Defendants reasonably suspected he may be armed and/or on drugs, and Brown was fleeing through public streets and an apartment complex where tenants were outside. Thus, there was no obvious constitutional violation in this case.

In *Tennessee v. Garner*, the United States Supreme Court held that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." 471 U.S. at 11. In light of this holding and the above

caselaw establishing that it is reasonable for officers to use deadly force to apprehend fleeing motorists, a reasonable officer in Bowman's position would not have known that his conduct may have been unlawful. Accordingly, Bowman is entitled to qualified immunity as to the use of force claim related to his use of a vehicle to seize Brown.

### B. Defendants' Use of Force After Brown was Handcuffed

The court has already determined that there is a question of fact whether Defendants violated Brown's Fourth Amendment rights when they used force against him after he was on the ground and handcuffed. Qualified immunity therefore turns on the second prong and whether the right at issue was clearly established. *See Saucier*, 533 U.S. at 201.

Defendants do not directly address qualified immunity as to this use of force incident. (*See* Doc. 31.) They argue generally that after Brown was on the ground, he punched, kicked, and clawed at Defendants to avoid being handcuffed, and that this struggle lasted for approximately 30 seconds before Defendants were eventually able to handcuff him. (*Id.* at 7; Doc. 32 ¶¶ 29–30.) But Brown disputes these facts, and the Court must take his allegations are true. Brown states that after he was on the ground, he could hardly move due to the impact from Bowman's vehicle, and Defendants handcuffed him immediately. (Doc. 15, Brown Aff. ¶ 6; Doc. 32, Ex. 1, Brown Dep. 20:25.) After he was handcuffed, Defendants continued to punch and beat him, even though Brown was not resisting. (Doc. 1 at 4; Doc. 15, Brown Aff. ¶¶ 7, 11.)

Multiple Ninth Circuit cases have addressed punching suspects who posed little to no threat and were not resisting when force was used. In *Blankenhorn v. City of Orange*, the court found that the officers were not entitled to qualified immunity because the state of the law put the officers on notice that "punching [the plaintiff] to free his arms when, in fact, he was not manipulating his arms in an attempt to avoid being handcuffed," violated the Fourth Amendment. 485 F.3d 463, 481 (9th Cir. 2007). In *Drummond v. City of Anaheim*, the court found that the "officers' use of severe force was constitutionally excessive" in light of the fact that the force was used when the plaintiff was "handcuffed and lying on the ground," and the officers were not entitled to qualified immunity. 343

F.3d at 1059.

Finally, the Ninth Circuit has long held that "where there is no need for force, *any* force used is constitutionally unreasonable." *See, e.g.*, *Headwaters Forest Def.*, 240 F.3d at 1199); *see also Blankenhorn*, 485 F.3d at 481 (citing *Graham*'s "clear principle" that "force is only justified when there is a need for force"); *Motley v. Parks*, 432 F.3d 1072, 1088 (9th Cir. 2005) ("[t]he use of force against a person who is helpless or has been subdued is constitutionally prohibited"), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012); *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) ("[g]ratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment"); *P.B. v. Koch*, 96 F.3d 1298, 1303–04 & n.4 (9th Cir. 1996) ("since there was no need for force, [the defendant's] use of force was objectively unreasonable").

In light of this precedent, it is clear that Defendants were on notice that beating and punching an arrestee who was already on the ground and handcuffed would violate the Fourth Amendment. Consequently, Defendants are not entitled to qualified immunity as to this use of force incident.

**VI.   Order to Show Cause**

As mentioned, Brown failed to file a response to Defendants' Motion for Summary Judgment. Brown's last filing in this matter was his Motion for Extension to File a Response on November 20, 2020. (Doc. 35.) Thus, it is not clear whether Brown seeks to proceed with this case.

Federal Rule of Civil Procedure 41(b) allows a court to dismiss an action for failure to prosecute. *See* Fed. R. Civ. P. 41(b); *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629–30 (1962) (a court's authority to dismiss for lack of prosecution is necessary to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the district courts); *Hells Canyon Pres. Council v. U .S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) (a court may dismiss under Rule 41(b) for failure to prosecute or comply with rules of civil procedure or the court's orders).

Before setting a settlement conference or a trial schedule, the Court will direct Brown to show cause why this action should not be dismissed for failure to prosecute. Brown will be given 15 days to file a "Response" to this Order detailing whether he seeks to proceed with his remaining Fourth Amendment claim and why this action should not be dismissed due to his failure to prosecute this action. If Brown fails to file a Response, the remaining claim in this action will be dismissed without further notice to Brown.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 31.)

(2) Defendants' Motion for Summary Judgment (Doc. 31) is **granted in part** and **denied in part** as follows:

(a) the Motion is **granted** as to the Fourth Amendment excessive force claim against Defendant Bowman related to the use of his vehicle; and

(b) the Motion is otherwise **denied**.

(3) The remaining claim is the Fourth Amendment excessive force claim against Defendants related to the use of force after Plaintiff was on the ground.

(4) Within **15 days** from the date of this Order, Plaintiff must file a Response to this Order and show cause why this action should not be dismissed for failure to prosecute.

Dated this 25th day of May, 2021.

James A. Teilborg
Senior United States District Judge